<u>IN THE COURT OF APPEALS</u>
<u>OF MARYLAND</u>

No. 96

September Term, 2008

---

MASTER FINANCIAL, INC., *et al.*

v.

RALPH  S. CROWDER, *et al.*

---

Bell, C.J.
Harrell
Battaglia
Greene
Eldridge, John C. (Retired,
    Specially Assigned)
Wilner, Alan M. (Retired,
    Specially Assigned)
Cathell, Dale R. (Retired,
    Specially Assigned),

JJ.

---

Opinion by Wilner, J.

---

Filed:  June 9, 2009

Before us are nineteen lawsuits, nine of which are class actions.  In all of them, the plaintiffs, each of whom had allegedly obtained a loan secured by a second mortgage on residential property, claimed that their respective loan transactions violated the State Secondary Mortgage Loan Law (SMLL) in several respects, and they sought redress under that statute.  Several of the plaintiffs also asserted violations of the State Consumer Protection Act (CPA), and a few sought a declaratory judgment that, because of a particular violation of the SMLL, the loan agreements, as a matter of common law, were void or voidable as illegal contracts.

Named as defendants in all of the cases were the entities that had allegedly originated the respective mortgage loans to the plaintiffs (lender defendants) and entities that had purchased those mortgage loans from the lender defendants (holder defendants).  In some of the class action cases, a third category of defendant (non-holder defendants) was added.  That category consisted of entities which had purchased from lender defendants mortgage loans made to persons other than the named plaintiffs but which were alleged to be "juridically linked" to the named plaintiffs.

The Circuit Court for Baltimore City dismissed all of the actions, principally on the ground that, as none of the lawsuits had been filed within three years after the closing of the respective loans, they were barred by limitations.  The court also held that the class action plaintiffs had no cause of action against the non-holder defendants, which had no connection with any of those plaintiffs or their loans.  On appeal, the Court of Special

Appeals concurred in most of the conclusions and holdings of the Circuit Court, including the findings that the applicable limitations period was three years and that no cause of action was stated against the non-holder defendants. It disagreed, however, with the Circuit Court's finding that the actions under the SMLL were entirely barred by limitations and, to that extent, reversed the Circuit Court judgment. *Crowder v. Master Financial*, 176 Md. App. 631, 933 A.2d 905 (2007).

On cross-petitions, we granted *certiorari* to review the intermediate appellate court's conclusions that (1) the claims under the SMLL were subject to the three-year statute of limitations, (2) they were, however, not entirely barred by limitations, and (3) the plaintiffs in the class action suits had no standing, on behalf of absent class members, to sue the non-holder defendants.

The thrust of the plaintiffs' argument as to limitations was that their claims were based, at least in part, on the loan instruments, that some of those instruments were under seal or should be treated as if they were under seal, and that those claims were therefore subject to a 12-year statute of limitations under Maryland Code, § 5-102(a)(1) or (5) of the Cts. & Jud. Proc. Article (CJP) rather than the three-year period allowed by CJP § 5-101. The defendants averred that the claims were based entirely on the duties, obligations, rights, and remedies set forth in the SMLL and not on the loan instruments and that the period of limitations applicable to those statutory claims was three years.

As the case was presented in the Circuit Court, in the Court of Special Appeals, in the cross-petitions for *certiorari*, and, in the initial briefs and oral argument in this Court,

neither side ever contended that the period of limitations applicable to claims under SMLL was anything but three years. That was assumed. As noted, the major dispute was whether the claims were, in fact or in law, statutory claims subject to that three-year period of limitations or were actions on loan instruments under seal. Following oral argument, this Court discovered a line of cases that cast doubt on that assumption, and, in order to permit the parties to address the issues raised by that line of cases, we directed that supplemental memoranda be filed and additional argument be scheduled on the following question:

> "If, as the lower courts held, the plaintiffs' claims are based entirely on the duties, prohibitions, and remedies set forth in the [SMLL] and not on the respective loan instruments, whether, in light of the holdings in *Greene Tree H.O. v. Greene Tree Assoc.*, 358 Md. 453 (2000), *Mattare v. Cunningham*, 148 Md. 309 (1925), and cases cited therein, those claims constitute [an] 'other specialty' under [CJP § 5-102]."[1]

Having considered the supplemental memoranda and oral argument, we are convinced that the plaintiffs' actions for civil penalties under SMLL do, indeed, fall within the category of "other specialty" under CJP § 5-102(a)(6) and that they are therefore subject to a 12-year statute of limitations. To that extent, we disagree with the

---

[1] For good reason, it is rare that the Court will add an issue not raised by the parties in either the lower courts or this Court. As we observed in *Robinson v. Bunch*, 367 Md. 432, 440, 788 A.2d 636, 641-42 (2002), however, "in circumstances where we have determined that the proper resolution of a case requires our consideration of certain matters not dealt with by the parties, we have, by order, added issues that were neither presented in certiorari petitions and cross-petitions nor raised in the courts below." *See also County Council v. Dutcher*, 365 Md. 399, 405, 780 A.2d 1137, 1140 (2001).

ultimate judgments of the two lower courts on that issue.  We do agree with those courts,

however, that the plaintiffs may not proceed against the non-holder defendants and that

the claims under the CPA are subject to a three-year statute of limitations.  We shall hold

as well that the common law actions to declare the loans void or voidable are also subject

to the three-year period of limitations.


## BACKGROUND

The credit provisions of the SMLL are found in Maryland Code, §§ 12-401

through 12-415 of the Commercial Law Article (CL).  Among other things, the SMLL

defines a secondary mortgage loan (§ 12-401(i)), prohibits a person from making such a

loan unless the person is licensed under the Maryland Mortgage Lender Law[2] or is

exempt from such licensing (CL § 12-402), limits the amount of interest, fees, points,

commissions, and other charges that may be exacted in connection with a secondary

mortgage loan (CL §§ 12-404 through 12-406), and requires certain disclosures to certain

borrowers (CL § 12-407.1).  Violators of those or any other provision of the SMLL are

subject to civil and criminal penalties.  Of particular relevance here is CL § 12-413,

which provides for civil penalties:

> "Except for a bona fide error of computation, if a lender
> violates any provision of this subtitle he may collect only the
> principal amount of the loan and may not collect any interest,
> costs, or other charges with respect to the loan.  In addition, a

---

[2] Maryland Code, §§ 11-501 through 11-524 of the Financial Inst. Article)

lender who knowingly violates any provision of this subtitle
also shall forfeit to the borrower three times the amount of
interest and charges collected in excess of that authorized by
law."

In their respective complaints and in papers filed thereafter, the plaintiffs claimed
that the defendants violated the SMLL by (1) not being licensed as required, (2) charging
the plaintiff-borrowers, at the time of closing, costs, fees, and expenses in excess of those
permitted by the law, and (3) failing to provide a mandated disclosure form at or before
the time of closing. In consequence of those alleged violations, all of the plaintiffs sought
a refund of the unlawfully excessive fees charged at closing and all interest already paid
by them on their loans and an order relieving them from the obligation to pay any further
interest. In the nine class action suits, the plaintiffs alleged that the defendants had
*knowingly* violated the SMLL and thus sought, as additional recompense, three times the
amount of interest and excessive charges collected by the defendants.

The Consumer Protection Act is found in Title 13 of the Commercial Law Article.
CL § 13-301 defines certain unfair or deceptive trade practices, among which are (1) false
or misleading statements or representations which have the capacity , tendency, or effect
of deceiving or misleading consumers, (2) representations that consumer goods, realty, or
services have a characteristic, use, or benefit which they do not have, (3) failure to state a
material fact if the failure deceives or tends to deceive, and (4) misrepresentation,
knowing concealment, or omission of any material fact with the intent that the consumer
rely on the same in connection with the promotion or sale of consumer goods, realty, or

-5-

services.  CL § 13-303 prohibits a person from engaging in any unfair or deceptive trade practice in the extension of consumer credit (a defined term in CL § 13-101(d)), and CL § 13-408 permits persons to bring an action to recover for injury or loss sustained as the result of a practice prohibited by the Act.  Those plaintiffs suing under the CPA contended that, by engaging in the conduct alleged with respect to the SMLL, the defendants committed the unfair and deceptive trade practices noted above, and they claimed all damages allowable by the CPA resulting from those violations, plus attorneys' fees and injunctive relief.

The action, by some of the plaintiffs, for declaratory judgment that the loan transactions were void or voidable was based on the claim that the defendants (or at least the lender defendants) were not licensed as required by both the SMLL and the Maryland Mortgage Lender Law.  Those plaintiffs argued that the licensure requirement is an integral part of the regulatory scheme embodied in the SMLL and that loan transactions entered into by entities required to be licensed but which were not were illegal and therefore void or voidable.

Each of the petitioner defendants moved to dismiss the complaints on the ground that the actions were barred by limitations.  As noted, they averred that the applicable statute of limitations was three years, as provided in CJP § 5-101, that all of the operative facts underlying the claims were known to the plaintiffs at or before the closing on their respective loans, and that none of the complaints were filed within three years after the loans closed.  The non-holder defendants moved to dismiss the claims against them on the

-6-

alternative ground that, as they had no connection with any of the plaintiffs' loans, the plaintiffs had no cause of action against them.

The plaintiffs offered four responses to the limitations defense. First, they argued that, because some of the plaintiffs had signed the notes or deeds of trust under seal, the applicable statute of limitations in their cases was twelve years, as prescribed by CJP § 5-102(a)(1) (promissory note or other instrument under seal) or § 5-102(a)(5) (contract under seal), not the three years allowed under § 5-101. Second, they urged that, by reason of the "discovery rule," their causes of action did not accrue until they discovered the terms and remedies in the SMLL, *i.e.*, until they knew that the defendants had acted unlawfully and they became aware of their right to sue, which, according to them, occurred within three years before the actions were filed. Third, they averred that limitations did not bar their claims -- at least not entirely -- because they financed the closing costs (the unlawfully excessive fees and charges), that the acceptance of each payment made on the loan thus resulted in the defendants' collecting a fee or charge they were prohibited by CL §§ 12-405(a)(3) and 12-411 from collecting, and that the acceptance of each such payment constituted a separate and continuing wrong. Finally, they claimed that, because the defendants failed to provide the disclosure statement required by CL § 12-407.1, the statute of limitations was tolled.

The Circuit Court rejected each of those responses, found the limitations defense to be valid, and dismissed the actions. It concluded that:

(1) Because the plaintiffs' actions were based entirely on the statutes and not on

any provision in the notes or deeds of trust, CJP § 5-102 had no application and the applicable period of limitations was therefore three years;

(2) A cause of action accrues under the discovery rule when the plaintiff has knowledge of the legally operative facts permitting the filing of a claim, and the plaintiffs undisputably had knowledge of those facts when they received the closing documents on the day their loans were closed;

(3) The fact that the plaintiffs chose to finance the closing costs did not operate to delay the accrual of their cause of action under a "continuing harm" theory, in that the harm occurred when the allegedly excessive charges were assessed at closing and the plaintiffs were aware that those charges had been assessed at that time; and, finally

(4) Limitations was not tolled because the plaintiffs did not receive the disclosure form specified in CL § 12-407.1, as that form is required only when the loan is for a commercial purpose, which was not the case with respect to any of the plaintiffs' loans.

The Court of Special Appeals agreed that the plaintiffs' claims were solely under the SMLL (and, as to some plaintiffs, the CPA by extension), that the applicable period of limitations was three years, not twelve, that accrual of the actions was not deferred until the plaintiffs discovered the terms of the SMLL and became aware that they might have legal remedies, and that accrual was not deferred by the failure of the lender defendants to give the plaintiffs the disclosure form specified in CL § 12-407.1.  Those conclusions mandated an affirmance of the dismissal of the CPA claims.

The intermediate appellate court found, however, that the plaintiffs' SMLL claims

were not entirely barred.  It noted that, under the civil penalty provision in CL § 12-413, a lender who violates any provision of the SMLL is entitled to collect only the principal amount of the loan and may not collect any interest or costs associated with the loan, and concluded that that provision was violated each time the defendants collected a monthly payment that included interest or an amortized part of the closing costs.  Thus, it held that the plaintiffs' claims "for recovery of monies wrongfully paid under CL § 12-413 did not finally accrue at the time of closing because the borrowers could not pursue the remedy provided in CL § 12-413 until the lenders had collected interest, costs, or other charges in excess of the principal amount of the loan." *Crowder v. Master Financial, supra*, 176 Md. App. at 665, 933 A.2d at 925.

Rejecting a contrary holding of the U.S. District Court and the U.S. Court of Appeals for the Fourth Circuit in *Miller v. Pacific Shore Funding*, 224 F. Supp.2d 977 (D. Md. 2002), *aff'd* 92 Fed. Appx. 933 (4th Cir.2004) (*per curiam* unpublished), the Court of Special Appeals concluded that the plaintiffs were entitled to sue "following each payment of sums in excess of the principal" and that the statute of limitations "permits them to seek the statutory remedy for payments made within three years prior to the date of filing of their respective complaints." *Id.* at 667, 933 A.2d at 926.  By the same reasoning, the court found that the plaintiffs were entitled to seek declaratory relief "with respect to any payments made within that same time period as well as with respect to any ongoing or future liability under the loans." *Id.*

-9-

## DISCUSSION

### I. Limitations

Nature of Plaintiffs' Claims

We shall address first the contention raised in the plaintiffs' cross-petition for

*certiorari* that, in at least seventeen of the cases, the plaintiffs signed the note or deed of

trust under seal, that their claims were based on those loan instruments, and that the

applicable statute of limitations is therefore twelve years, rather than three.  For purposes

of this argument, we shall assume that, in those seventeen cases, the plaintiff's signature

*is* under seal, and we shall further assume (but expressly do not decide), that, if the

instruments would otherwise be regarded as "specialties" under CJP § 5-102(a)(1) or (5)

because the plaintiffs' signatures are under seal, they do not lose that status as to the

defendants merely because the lender was not required to sign the instruments and did

not, in fact, do so.[3]

_____

[3] CJP § 5-102 provides, in relevant part, that an action on any of the "specialties" enumerated in that section shall be filed within twelve years after the cause of action accrues.  Among the listed "specialties" are a "[p]romissory note or other instrument under seal," (§ 5-102(a)(1) and a "[c]ontract under seal" (§ 5-102(a)(5).  In cases dealing with *contracts*, signed by both parties, this Court has held on a number of occasions that, ordinarily, if one party's signature is under seal but the other party's is not, the contract is a specialty subject to the twelve-year statute of limitations as to the one under seal, while as to the other, it is a simple contract subject to the three-year statute.  *See Federalsburg v. Allied Con.*, 275 Md. 151, 156-57, 338 A.2d 275, 279 (1975) and cases cited there.  Relying on that principle, the defendants argue that, as only the plaintiffs' signatures are under seal, the instruments, as to the defendants, are simple contracts.  The plaintiffs distinguish those cases and that principle on the ground that these cases do not involve *contracts* but notes and instruments, and that, in Maryland, a lender is not required to sign (or seal) a note or deed of trust in order for it to be enforceable.

The governing fact here, as both lower courts observed, is that these actions are not on the notes or deeds of trust. The plaintiffs are not seeking to enforce those instruments, or to invalidate or reform them based on any alleged imperfection in the instruments themselves. The sole bases of their complaint under the SMLL are that (1) the lender was not properly licensed, (2) they were charged excessive origination fees, and (3) they were not given a disclosure form supposedly required by the statute, and the only remedies sought were those provided by CL § 12-413. Those alleged facts and the consequences of them are entirely extraneous to the notes and deeds of trust. The deed

---

Both sides cite Maryland Code, § 4-102 of the Real Property Article – the deed poll statute – which provides, in relevant part, that if a deed contains a covenant by the grantee or reservation of an incorporeal interest in the property and is signed only by the grantor, "acceptance of delivery of the deed by the grantee binds the grantee to the provisions in the deed as effectively as if he had signed the deed as a grantee." The plaintiffs argue essentially that, because the defendants also have obligations under the deeds of trust – to release the lien and mark the note "paid" when it *is* paid – they are bound as if they had signed the deed of trust. The plaintiffs also find some succor in *Federalsburg*. We noted there, as a prelude to the point relied on by the defendants, that "a contract need not always have as many separate seals as there are signatories to it, since in some circumstances a rebuttable presumption of a party's adoption as his own of another party's seal can be established (*e.g.*, such as when the instrument purports on its face to be sealed by all parties signing it)." *Federalsburg*, 275 Md. at 156, 338 A. 2d at 279. *See also Restatement (Second) of Contracts*, § 98(2) and comment *a*.

We have not previously considered whether the principles set forth in *Federalsburg* apply in this situation, where only the borrower/grantor is required to sign and does sign a note or deed of trust and that signature is under seal – whether there is a difference between an "instrument" and a "contract" in this regard, whether RP § 4-102 applies to the note or just the deed of trust – nor need we do so in this case, because, for the reasons stated in the text above, it would make no difference whether, as to the defendants, we were to regard the notes and deeds of trust as constituting a "specialty" under CJP § 5-102.

-11-

poll statute itself, § 4-102 of the Real Property Article, supports that distinction.  As noted *ante* in footnote 3, acceptance of delivery of the deed of trust binds the grantee "to the provisions of the deed," but it is not the "provisions of the deed" that are either challenged or sought to be enforced here.  Notwithstanding that the civil penalty provision in CL § 12-413, if applied, would excuse the borrower from having to pay the interest provided for in the note and deed of trust, neither the statute nor an action under it in any way alters the terms of the note or deed of trust.

That is true as well with respect to the action under the CPA and the action to declare the loan transactions void or voidable.  The sole basis of both of those claims is the violation of the SMLL, not anything inherent in the loan instruments.  It is the SMLL violations that were alleged to constitute the unfair or deceptive trade practices under the CPA and to render the loan instruments invalid.  The only damages sought in the CPA claim are those allowed by the CPA – damages "allowable by statute resulting from the violations" plus attorneys' fees, costs, and restitution.  The focus, then, is on the statute of limitations applicable to those statutory claims.

## CPA Claims

The period of limitations applicable to the CPA claims is the issue most easily resolved, for there is direct and recent precedent.  In *Greene Tree H.O.A. v. Greene Tree Assoc.*, 358 Md. 453, 749 A.2d 806 (2000), we held that claims based on the CPA are not specialties for purposes of CJP § 5-102 and are therefore subject to the three-year period

of limitations provided for in CJP § 5-101. We are not asked by the plaintiffs to overturn that decision in that regard, and we have no inclination to do so. That aspect of the Court of Special Appeals judgment will be affirmed.

<u>Claims For Civil Penalties Under SMLL</u>

We have expressed our concurrence with the conclusions of the Circuit Court and the Court of Special Appeals that the plaintiffs' claims for civil penalties under CL § 12-413 are based solely on the duties, obligations, rights, prohibitions, and remedies provided for in the SMLL. The limitations question, then, is whether such claims, based on that statute, constitute an "other specialty" within the meaning of CJP § 5-102(a)(6). If so, the limitations period is twelve years; if not, it is three years.

As most recently pointed out in *Greene Tree*, this Court has dealt with the issue of whether a statutory claim constitutes a specialty in a number of cases, dating back to *Ward v. Reeder*, 2 H. & McH. 145 (1789). We observed in *Greene Tree* that "attempts to identify a statutory specialty by defining the nexus between a claim and the statute at issue have led to complexities and, arguably, conflicting results," and, apart from noting that statutory specialties "usually have involved an action of debt for a fixed *or determinable* sum," we eschewed an attempt, beyond what the Court had already stated, "to state an all-encompassing definition of a statutory specialty." (Emphasis added). *Greene Tree H.O.A. v. Greene Tree Assoc., supra*, 358 Md. at 481-82, 749 A.2d at 50.

There is no need for us to repeat the extensive history recited in *Greene Tree* in

order to bolster the conclusions we reach in this case.  We start with the undisputed

propositions that, although claims based on a statute *may* fall within the meaning of

"other specialty" under CJP § 5-102(a)(6), not all claims based in some way on rights,

duties, obligations, prohibitions, or remedies mentioned or provided for in a statute *do*

fall within that category.  The problem, left unresolved in *Greene Tree*, is to discern a

reasonable standard for determining when a statutory claim *would* qualify for inclusion in

that category.

 Because we are dealing with statutes, one preliminary and possibly decisive factor

is whether the Legislature has provided a specific period of limitations for enforcement of

the statute.  Some statutes that prohibit or require conduct and provide remedies for

violations contain such provisions, and if they do, those provisions ordinarily will govern.

*See*, for example, CL § 11-109(c) (requiring that civil action seeking damages for

violation of Foreign Discriminatory Boycotts Act be brought within four years); CL § 11-

209(d) (same for bringing civil action for damages for violation of Antitrust Act); CL §

12-1019 (requiring that civil action for violation of Credit Grantor Closed End Credit Act

be filed no later than six months after loan is satisfied).  The issue of CJP § 5-102(a)(6)

ordinarily arises only if the regulatory statute is silent in that regard.

 In *Mattare v. Cunningham*, 148 Md. 309, 129 A. 654 (1925), this Court seemingly

did adopt a general principle for distinguishing those statutory claims that would be

regarded as specialties subject to a 12-year period of limitations from those that would

not.  The action, to recover death benefits ordered by the Workers' Compensation

Commission, was filed seven years after issuance of the award.  At the time, the

predecessor statute to CJP § 5-102, codified as Art. 57, § 3 of the 1924 Code, provided a

12-year period of limitations for a "bill, testamentary, administration or other bond

(except sheriffs and constables' bonds), judgment, recognizance, statute merchant, or of

the staple *or other specialty whatsoever* (emphasis added), and the issue was whether an

action based on the award constituted an "other specialty whatsoever."

In holding that the claim *did* constitute such a specialty – a statutory specialty –

the Court relied on two authorities.  It cited first *Wardle v. Hudson*, 55 N.W. 992, 993

(Mich. 1893), in which the Michigan court concluded that:

> "Specialty by statute means some right or cause of action
> given by statute which does not exist at common law.  In such
> cases the nature or cause of action does not depend, in any
> degree, upon any contractual relation.  There is no original
> obligation whatever created by the act of the parties."

*Mattare, supra*, 148 Md. at 314-15, 129 A. at 656.

The Court's principal reliance was on a passage from *Wood on Limitation* § 39, at

137-38, which it quoted at length and apparently regarded as providing a general rule for

determining when a statutory claim constitutes a specialty:

> "The test, whether a statute creates a specialty debt or not,
> might be said to be whether, independent of the statute, the
> law implies an obligation to do that which the statute requires
> to be done, and whether independently of the statute a right of
> action exists for the breach of the duty or obligation imposed
> by the statute.  If so, then the obligation is not in the nature of
> a specialty, and is within the statute [of limitations] so long as
> the common law remedy is pursued; but if the statute creates
> the duty or obligation, then the obligation thereby imposed is

-15-

a specialty, and is not within the statute [of limitations]."

*Mattare, supra* at 315, 129 A. at 656.  The Court quoted further from *Wood*:

> "If the statute imposes an obligation, and gives a special
> remedy therefor, which otherwise could not be pursued, but at
> the same time a remedy for the same matter exists at common
> law independently of the statute, and the statute does not take
> away the common law remedy, the bar of the statute [of
> limitations] is effectual when the common-law duty or
> liability is pursued, but is not applicable when the special
> statutory remedy is employed."

*Id.*

Applying those principles, the Court concluded that the award of the Commission

was a statutory specialty and that a suit on the award was thus subject to the 12-year

period of limitations.

The same principles were applied in *Baltimore v. Finance Corp.*, 168 Md. 13, 176

A. 480 (1935) and in *Sterling v. Reecher*, 176 Md. 567, 6 A.2d 237 (1939), although, on

the facts, they produced different results.  The action in *Baltimore v. Finance Corp.* was

based on a statute that required the counties and Baltimore City to refund taxes that had

been paid erroneously or mistakenly.  Under common law, taxes paid under a mistake of

*fact* could be recovered, but taxes paid under a mistake of *law* could not be.  The statute

removed that distinction and provided for the recovery of taxes paid under a mistake of

law.

The action, to recover taxes paid under a mistake of law, was brought more than

three years, but less than twelve years, after the taxes were paid, and, as in *Mattare*, the

-16-

issue was which period of limitations applied.  Citing but distinguishing *Mattare*, the Court held that the suit to recover taxes paid under a mistake of law was essentially a common law action in assumpsit rather than one based solely on the statute.  To hold otherwise, the Court noted, would allow a 12-year period of limitations for actions to recover taxes paid under a mistake of *law* when the equivalent action to recover taxes paid under a mistake of *fact*, under the common count for money had and received, was subject to the normal three-year period of limitations, an anomaly the Court chose not to bless.

*Sterling v. Reecher* involved a statute making the stockholders of a bank liable  to the bank for up to the par value of their stock but allowing that liability to be enforced only by a receiver, trustee, or assignee of the bank, appointed upon an insolvency.  The action by the receiver, Sterling, was filed six years after commencement of the receivership, and the issue was raised whether it was barred by limitations.  The stockholders' liability was entirely statutory; the issue was the remedy.  Concluding that the remedy also was entirely statutory, available only to a receiver, trustee, or assignee acting under court jurisdiction, the Court held that the action was a statutory specialty subject to the 12-year period of limitations.  *Compare Ins. Comm. v. Wachter, Etc., Inc.*, 179 Md. 608, 21 A.2d 141 (1941), where an assessment against subscribers of a reciprocal insurance exchange was held to be based on a contractual liability, subject to the three-year limitations period, rather than on a statute that required such liability to be expressed in the contracts.

-17-

Although it does not appear from the Opinions in these pre-*Greene Tree* cases that the determination of whether the action was a statutory specialty actually hinged on whether the damages sought were liquidated or unliquidated, in *Greene Tree*, we observed that the close relationship between statutory specialties and the form of action of debt "strongly indicates that a claim for unliquidated damages is not one based on a statutory specialty." *Greene Tree, supra*, 358 Md. at 476-77, 749 A.2d at 818. The Court also noted that, whether damages were liquidated or unliquidated, actions on a promissory note, bond, judgment, or recognizance usually involve a fixed sum, but noted as well that, in *Gildenhorn v. Columbia R.E. Title*, 271 Md. 387, 317 A.2d 836 (1974), we held that an action for unliquidated damages based on a title insurer's failure to defend the insured's title, as required by a title insurance policy under seal, was on a specialty subject to the 12-year period of limitations.

The defendants read these passages from *Greene Tree* as a holding that an action for unliquidated damages cannot constitute a specialty, but that is not what the Court said or held. We made no such express ruling and, indeed, refrained from adopting *any* "encompassing definition of a statutory specialty," being content merely to hold that an action for unliquidated damages under the CPA did not constitute a statutory specialty.

The general statute of limitations in Maryland is three years; as made clear in CJP § 5-101, that is the default that applies unless another period is applicable. It is evident as well from our cases that the "other specialty" stated in CJP § 5-102(a)(6) is a relatively narrow catchall that does not suffice to exempt from the three-year period every claim

-18-

that happens to be based in some way on a statute.  There is, we think, sufficient

guidance in *Mattare*, *Greene Tree*, and the intervening cases to provide a workable

general principle for determining when a statutory action falls within CJP § 5-102(a)(6):

> An action based on a statute will constitute an "other
> specialty" subject to the 12-year period of limitations if (1)
> the duty, obligation, prohibition, or right sought to be
> enforced is created or imposed solely by the statute, or a
> related statute, and does not otherwise exist as a matter of
> common law; (2) the remedy pursued in the action is
> authorized solely by the statute, or a related statute, and does
> not otherwise exist under the common law; and (3) if the
> action is one for civil damages or recompense in the nature of
> civil damages, those damages are liquidated, fixed, or, by
> applying clear statutory criteria, are readily ascertainable.

The question, then, is whether, applying those standards, the actions now before us

qualify as an "other specialty."

Although not having the benefit of this guidepost, the defendants posit several

reasons why we should not apply the 12-year period of limitations in this case.  First,

they point out the undisputed fact that, until we added the issue, the plaintiffs never

argued that their claims constituted a statutory specialty and, although the defendants do

not challenge the authority of the Court to add the issue and to decide it (*see* n. 1, *ante*) ,

they aver that "[n]o justification exists for deciding this issue raised for the first time at

this stage of the litigation."

In fact, there is good reason to decide the issue in this case; we did not add it capriciously.  The Court of Special Appeals, in a reported opinion, held that a claim under the SMLL is subject to a 3-year statute of limitations.  If we were to disagree with that conclusion of law, as we do, and yet decline to reach the issue on the ground of non-preservation, we would be required to affirm a ruling that we believe to be in error and have that ruling cited as precedent henceforth.  That is not wise judicial policy.

Second, defendants urge that the 12-year period of limitations for statutory specialties should be reserved for cases "where liability and damages are clear and where preservation of the relevant evidence is not a concern."  That test is too narrow and not consistent with the standard we have just articulated.  Even actions based on bonds and judgments, which the defendants concede are specialties, may be challenged in ways that will require extensive testimony and fact-finding.  There may be allegations of fraud or other fact-based defenses going to the validity of the instrument.  There may be a dispute over whether the debt has been discharged or released.  There may be claims of partial payment. There may be disputes as to language interpretation that could affect both liability and the amount owed.  Relative ease of proof may be common in some statutory specialties, but it is not a requisite element.

In any event, the kinds of disputes posited by the defendants in this case appear to us to be significantly overstated, and none detract from the simple facts that (1) the duties, obligations, prohibitions, and rights sought to be enforced by the plaintiffs are created and imposed solely by the SMLL, (2) the remedy pursued – forfeiture of all

-20-

interest and unlawfully assessed fees, or, in the class action cases, forfeiture of three times the amount of interest charged – is authorized solely by the SMLL, and (3) the ascertainment of those amounts is readily ascertainable.[4]

Finally, on the limitations issue with respect to the CL § 12-413 claims, the defendants now argue, for the first time, that, if the plaintiffs' claims constitute a statutory specialty under the SMLL, the interest forfeiture constitutes a "penalty" subject to the one-year period of limitations established under CJP § 5-107.[5] Having excused the plaintiffs' failure to raise the issue of the 12-year statute of limitations, we shall, as a matter of fairness, excuse the defendant's equivalent failure to raise the issue of the one-year period.

The Court of Special Appeals dealt with this specific issue in *Williams v. Standard Federal Savings*, 76 Md. App. 452, 545 A.2d 708 (1988), *cert. denied*, 313 Md. 689, 548 A.2d 128 (1988). After a thorough analysis of both CJP § 5-107 and the SMLL, the court

---

[4] The defendants suggest that, in order to determine liability under the SMLL, the trial court would need to decide whether (1) the loans in question constitute secondary mortgage loans under the SMLL, (2) the SMLL applies to the loan, (3) the closing statements accurately reflect the fees actually charged, (4) the fees exceeded what is allowed under the SMLL, (5) the loans were eligible for purchase under guidelines established by the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation, (6) the lenders made all necessary disclosures, and (7) there was a bona fide error in computing the fees. Some of those issues are issues of law; others may well be resolved based on the relevant documents.

[5] CJP § 5-107, with exceptions not relevant here, provides that "a prosecution or suit for a fine, penalty, or forfeiture shall be instituted within one year after the offense was committed."

concluded that the remedy under CL § 12-413 was for the private benefit of the plaintiffs

for the wrong they had suffered by reason of the SMLL violations and that the one-year

limitations period under CJP § 5-107 was not intended to encompass "a private right of

action to enforce a private remedy." *Id.* at 460, 545 A.2d at 711.  We agree with that

construction of both statutes and thus conclude, as did the *Williams* court, that CJP § 5-

107 has no application.


<u>Actions To Declare Loans Void Or Voidable</u>

Unlike the claims based on CL § 12-413, the actions to declare the mortgage loans

void or voidable because of SMLL violations are not based solely on the statute.

Although the basis for the relief sought arises from the statutory requirements,

obligations, and prohibitions, the remedy is purely a common law one, to invalidate a

contract or other instrument on the ground of illegality.  Under the standard enunciated

above, a statutory claim does not constitute an "other specialty" under CJP § 5-102 unless

the remedy sought for the violation is available only under the statute, or a related statute.

As that condition is not met, the actions to invalidate the loans are subject to the three-

year period of limitations set forth in CJP § 5-101 and are therefore barred.  Subject to

proving their SMLL claims through evidence, plaintiffs may recover the statutory civil

penalties but are no longer entitled to have the loans declared invalid.


## II. Juridically-Linked Non-Holder Defendants

In six of the class action suits, entities which did not make, and have never owned

or had any interest in, the mortgage loans made to the named plaintiffs, were included as defendants.  They are the non-holder defendants, and the sole basis for including them as defendants is the allegation that they purchased from one or more of the lender defendants mortgage loans made to persons who may be unnamed class members.[6]  The theory underlying the action against them is that, although they have done nothing to harm the named plaintiffs, they have violated the statutory rights of other putative members of the class and are therefore "juridically linked" either to the named plaintiffs or the other defendants.

The Court of Special Appeals noted that the "juridical link" doctrine, as espoused by the plaintiffs, has never been addressed by the appellate courts of this State.  It found persuasive the discussion and holding in *Miller v. Pacific Shore Funding, Inc. supra*, 224 F. Supp.2d 977 (D.Md. 2002), *aff'd* 92 Fed. Appx 933 (4th Cir. 2004) (*per curiam* unpublished) that "[i]n a multi-defendant action or class action, the named plaintiffs must establish that they have been harmed by each of the defendants" and that they may not use the procedural device of a class action "to bootstrap themselves into standing they lack."    *Crowder v. Master Financial, supra*, 176 Md. App. at 649, 933 A.2d at 916.

The plaintiffs complain that *Miller* and the other Federal cases relied on by the Court of Special Appeals were based on Federal standing requirements that do not apply to State courts, and they ask us to ignore those cases and follow rulings in other lower Federal court decisions from Massachusetts, Michigan, and Pennsylvania which, in their

---

[6] The class action complaints did not make clear the attenuated status of those defendants, but simply alleged that they were the holder of mortgage notes related to the mortgage loans made by a lender defendant to "Plaintiffs and/or the Class."

-23-

view, did apply the "juridical link" theory.  The defendants believe that the *Miller* line of

cases is correct, that the "juridical link" theory has been rejected in both Federal and State

courts, that there is no "juridical link" in this case in any event, and that, in *Bd. of Public*

*Welfare v. Myers*, 224 Md. 246, 167 A.2d 765 (1961), the issue was resolved as a matter

of Maryland law.  Because *Myers* is cited by the defendants as dispositive, we shall begin

with it.  As a preclude, however, it is important to keep in mind that the class in this

action has yet to be certified.  At this point, the only plaintiffs are the named plaintiffs.

Robert Myers, a 13-year-old African-American youth, was found delinquent by a

juvenile court and, because of his record, was facing commitment to a training school.

There were then four State training schools in Maryland – two for boys and two for girls

– all of which, under State statutory law, were racially segregated, one each for white

youth and one for black youth.  Although each school had its own Board of Managers,

they were under the general supervision of the State Board of Public Welfare.

Myers asked to be sent to the Maryland Training School, which was for white

males.  When the judge held the matter *sub curia*, Myers, "on behalf of himself and

others similarly situated," filed a declaratory judgment action against the Board of Public

Welfare and the Boards of Managers of all four schools, claiming that the racial

segregation was unconstitutional  The juvenile court judge also heard the declaratory

judgment case.  He agreed with Myers and entered a decree declaring racial segregation

in the four schools unconstitutional.  Contemporaneously, in the juvenile delinquency

case, he committed Myers to the Maryland Training School.

On appeal by the several boards, this Court agreed with the finding that the

segregation was unconstitutional but concluded that Myers had no legitimate complaint

with respect to the two schools for girls or the school formerly reserved for black males,

as none of them discriminated against him, or any other black males, on the basis of race.

The Court modified the decree to apply it only to the Maryland Training School and the

Board of Public Welfare – the only "necessary parties" in the Court's view – and it is

that aspect of the case which the defendants find relevant.  The Court treated the issue as

one of Myers's standing to sue the other three schools, and, in that regard, observed that

"this Court does not decide constitutional questions in the abstract or at the instance of

persons without standing to sue." *Id*, 224 Md. at 252, 167 A.2d at 768.  Citing no

authority, the Court then declared that "[t]he cases indicate that the necessity of standing

is not obviated by seeking relief in the form of a class action." *Id.*

On that point, for which the case is cited, *Myers* is too slender a reed.  It was one

of the early cases in the country applying *Brown v. Board of Education*, 347 U.S. 483, 74

S. Ct. 686, 98 L. Ed. 873 (1954) to State-operated training schools, and, although the case

has been cited for its substantive holding that racial discrimination in training schools is

unconstitutional and for some comments regarding the effect of mootness in

Constitutional litigation, it has not been cited by us, or, so far as we can tell, by any other

appellate court, with respect to its limitation of the judgment to just the Board of Public

Welfare and the Maryland Training School based on standing.  Indeed, as to that, the

holding is wholly inconsistent with class action jurisprudence in desegregation cases.

When, in a class action by black persons complaining about racially segregated facilities

operated by a State or local government, the court has found the segregation unlawful, it

has required *all* of the racially segregated facilities to be desegregated, not just those

directly discriminating against the named plaintiffs in the class.[7]   That follows logically

from the landmark decisions in *Brown v. Board of Education* itself; the Court did not

require the desegregation of just white-only public schools, but the dismantling of a

segregated public school system. *See Green v. County School Board*, 391 U.S. 430, 435-

38, 88 S. Ct. 1689, 1692-94 , 20 L. Ed.2d 716, 722-24 (1968).

     We accept the neutral statement in *Myers* that "the necessity of standing is not

obviated by seeking relief in the form of a class action" but not the conclusions drawn by

the *Myers* Court from that statement.  That leaves us to examine the other cases cited by

the parties.

     The "juridically linked" theory, as applied in class action litigation, appears to

derive from some language in *LaMar v. H & B Novelty & Loan Co.*, 489 F.2d 461 (9th

Cir. 1973), where the doctrine was found inapplicable.  *LaMar* involved two separate

actions consolidated on appeal.  *LaMar* itself was a class action suit based on alleged

Truth-in-Lending Act violations by pawnbrokers. Although LaMar – the only named

plaintiff – had dealt with only one pawnbroker and had ultimately settled with that

defendant, he sought to maintain a class action against all pawnbrokers licensed under

Oregon law on behalf of all customers of such pawn brokers, on the theory that those

---

     [7] *See*, for example, *Kelley v. Altheimer*, 378 F.2d 483, 488 (8th Cir. 1967) ("[A]
Board of Education does not satisfy its constitutional obligation to desegregate by simply
opening the doors of a formerly all-white schools to Negroes"); *Kier v. County School
Board*, 249 F. Supp. 239, 246 (W.D. Va. 1966) (same); *Montgomery v. Oakley Training
School*, 426 F.2d 269 (5th Cir. 1970); *Crum v. State Training School for Girls*, 413 F.2d
1348 (5th Cir. 1969); *Board of Managers v. George*, 377 F.2d 228 (8th Cir. 1967).

defendants, too, violated the Act and harmed other members of the class.  In the second case, *Kinsling*, the named plaintiff complained that he was overcharged $10 by two airlines, in violation of the Federal Aviation Act.  In a class action, he sued them and six other airlines, with which he had no connection, on the theory that they were violating that Act in the same way, to the detriment of others in the class.  The District Court had found the class action viable in *LaMar* but dismissed it in *Kinsling*.

The Ninth Circuit court initially looked at the issue in terms of both standing, which had a jurisdictional underpinning, and the appropriateness of a class action under F.R. Civ. Pr. 23, but ultimately resolved the cases under Rule 23 and assumed standing. *Id.* at 463.  The predominant holding was that "a plaintiff who has no cause of action against the defendant can not 'fairly and adequately protect the interests' of those who do have such causes of action," and, for that reason, cannot use a class action to sue defendants he or she could not sue in an individual action. *Id.* at 466.  The court immediately noted, however, that:

> "Obviously, this position does not embrace situations in which all injuries are the result of a conspiracy or concerted schemes between the defendants at whose hands the class suffered injury.  Nor is it intended to apply in instances in which all defendants are juridically related in a manner that suggests a single resolution of the dispute would be expeditious."

*Id.*

The court found no basis for applying either exception in the cases before it, and, indeed, suggested that the "juridically related" exception had been applied, at least in theory if not in name, mostly in civil rights cases that challenged policies implemented on

a Statewide or countywide basis through various institutions maintained by the governmental entity, giving as examples *Washington v. Lee*, 263 F. Supp. 327 (M.D. Ala. 1966); *Broughton v. Brewer*, 298 F. Supp. 260 (N.D. Ala. 1969); *Samuel v. University of Pittsburgh*, 56 F.R.D. 435 (W.D. Pa. 1972) and *Contract Buyers League v. F. & F. Investment*, 300 F. Supp. 210 (N.D. Ill. 1969).

In *Payton v. County of Kane*, 308 F.3d 673 (7th Cir. 2002), the Seventh Circuit Court of Appeals examined the intervening application of the "juridical link" doctrine enunciated in *LaMar*. The challenge there was to a "bail fee" imposed on persons released on bail or on their own recognizance. The fee was authorized by Illinois law but was imposed by only 19 of the State's 102 counties. Six arrestees who were released on bail in two of those counties filed a class action against all 19 counties, which was dismissed by the District Court.

The appellate court reversed the dismissal as to the two counties that had imposed the fee on the named plaintiffs and then looked at whether the action could proceed against the other 17. From a basic standing point of view, the court confirmed that "to bring a valid case, a plaintiff must allege that a defendant – the very defendant sued – has somehow wronged her in a legally cognizable way." *Id.* at 678, citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136, 119 L. Ed.2d 351, 364 (1992). The issue as to the 17 other counties was whether the court had to look only at the named plaintiffs, who did not meet that test, or could look at the class as a whole, once the requirements of Rule 23 were met. Invoking the "juridical link" doctrine, the plaintiffs urged that they should be able to sue the other counties if they could show that their

injuries arose out of a common legal rule that was followed by all of the counties.

The court expressed skepticism "that the use of this terminology is conducive to sound analysis of the kind of problem presented here" and concluded that the real issue was "whether the plaintiff class was injured by the defendants, and if so, whether the claims of the proposed named plaintiffs are representative." *Payton v. County of Kane, supra*, 308 F.3d at 679.  The post- *LaMar* cases, said the court, suggest that "if all defendants took part in a similar scheme that was sustained either by a contract or conspiracy, or was mandated by a uniform state rule, it is appropriate to join as defendants even parties with whom the *named* class representative did not have direct contact." *Id.*  Given that the bail bond fee was imposed pursuant to a State law and that the county sheriffs that actually assessed the fee were all arms of the State, it was reasonable for the plaintiffs, as a class, to try to hold all counties accountable. *Id.* at 680. The issue was simply whether it was appropriate for the named plaintiffs, who were not directly harmed by what the other counties did, to represent unnamed plaintiffs who may have been so harmed.  That, the court held, was a Rule 23 issue that the trial court had never considered.  In remanding for such a determination, the court observed that:

> "This is not a case where the named plaintiff is trying to piggy-back on the injuries of unnamed class members.  That, of course, would be impermissible, in light of the fact that 'a named plaintiff cannot acquire standing to sue by bringing his action on behalf of others who suffered injury which would have afforded them standing had they been named plaintiffs; it bears repeating that a person cannot predicate standing on injury which he does not share.  Standing cannot be acquired through the back door of a class action.'"

*Id.* at 682, quoting from *O'Shea v. Littleton*, 414 U.S. 488, 493-94, 94 S. Ct. 669, 675, 38

L. Ed.2d 674, 682 (1974) and *Allee v. Medrano*, 416 U.S. 802, 828-29, 94 S. Ct. 2191, 2207, 40 L. Ed.2d 566, 588 (1974) (Burger, C.J., dissenting).

Some of the decisions on "juridical link" are not easy to reconcile. The vast majority of the courts that have actually addressed the doctrine seem to embrace it, if at all, only to the extent noted in *LaMar* and *Payton*. The Federal decisions treat it as a Rule 23 issue and hold that, in order for the named plaintiffs to join defendants with whom they have no connection, the link must be found in a conspiracy, contract, or uniform law or rule mandating or permitting the same conduct by those defendants. *See Moore v. Comfed Sav. Bank*, 908 F.2d 834, 838 (11th Cir. 1990). That also seems to be the position of the majority of State appellate courts that have dealt with the issue. *See Fernandez v. Takata*, 108 P.3d 917, 920 (Ariz. 2005); *Hammond v. Florida Asset Financing Corporation*, 695 N.W.2d 1, 15-16 (Iowa 2005); *State v. Madden*, 515 S.E..2d 351, 354-55 (W.Va. 1998). Most closely on point are *Miller v. Pacific Shore Funding,. Inc. supra*, 224 F. Supp.2d 977, *aff'd*, 92 Fed.Appx 933, *Faircloth v. Financial Asset Securities Corp.*, 87 Fed. Appx. 314 (4th Cir. 2004) (*per curiam* unpublished); and *Alexander v. PSB Lending Corp.*, 800 N.E.2d 984 (Ind. App. 2003), which involved the precise issue before us – whether named plaintiffs in an as-yet uncertified class can sue non-holder defendants who purchased second mortgage loans from the lender defendants but who have no connection with the named plaintiffs or their loans. In all three cases, the answer was "no."[8]

---

[8] The cases relied on by the plaintiffs, for the most part, have been class actions claiming violations of a particular ERISA benefits plan, in which the court has concluded that the named plaintiffs can represent the class with respect to other ERISA plans

We shall adopt the view of the majority on this issue. We need not decide whether to adopt the "juridical link" doctrine with respect to class action suits, because, even if we did, we would not go beyond the now well-established view that it does not apply beyond the limited scope enunciated in *LaMar, Payton,* and the other cases noted above, and, in the present context of this case, there is no basis for the application of that doctrine, as so limited. Although the same result may pertain were we to base our decision on the lack of "standing" of the named plaintiffs to sue the non-holder defendants, we shall base it instead on the theory applied in *LaMar, Payton,* and *Alexander* – namely that, under Md. Rule 2-231(a) – our equivalent of F. R. Civ. Pr. 23 – because the named plaintiffs have utterly no connection with those defendants, they cannot "fairly and adequately protect the interests" of those class members who might have such a connection.

> JUDGMENT OF COURT OF SPECIAL APPEALS AFFIRMED AS TO
> NON-HOLDER DEFENDANTS AND AS TO CLAIMS UNDER
> CONSUMER PROTECTION ACT BUT OTHERWISE REVERSED;
> CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO
> AFFIRM IN PART AND REVERSE IN PART THE JUDGMENT OF THE
> CIRCUIT COURT FOR BALTIMORE CITY AND REMAND TO THAT
> COURT FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH
> THIS OPINION; 50% OF THE COSTS IN THIS COURT AND IN THE
> COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONERS AND
> 50% BY RESPONDENTS.

---

involving same employer or administered by same insurer or fiduciary or a subsidiary thereof. *See Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410 (6th Cir. 1998); *Forbush v. J.C.Penney Company, Inc.*, 994 F.2d 1101 (5th Cir. 1993); and *Alves v. Harvard Pilgrim Health Care, Inc.*, 204 F. Supp.2d 198 (D.Mass. 2002). It is not clear that those cases really represent a departure from the limited scope of the "juridical link" doctrine followed generally, but, to the extent they do, they are clearly distinguishable and do not support the result sought by the plaintiffs in this case.